UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT NORRIS, | ) |
| | )     11-cv-9041 |
|     Plaintiff, | ) |
| | )     Judge Sharon Johnson Coleman |
| v. | ) |
| | ) |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of Social Security | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Robert Norris seeks review of the Social Security Administration's decision denying him disability benefits.[1] An ALJ determined that Norris is not disabled under federal law. Norris requests that this court reverse the agency's decision, find that he is entitled to benefits, and remand to the agency. Because substantial evidence supports the agency's decisions, its findings of fact are conclusive. The court, therefore, affirms the agency's decision.

**Legal Background**

Federal law provides benefits and supplemental security income to certain individuals who are disabled and who can no longer work. To be eligible for benefits, an individual must have a "disability" within the meaning of federal law. A person, generally, is disabled if he or she has an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] Norris's complaint names Michael J. Astrue, the agency commissioner from 2007–2013, as the defendant. Carolyn Colvin, the current acting commissioner, is automatically substituted. Fed. R. Civ. P. 25(d).

death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423c. Social Security employs a five-step process to determine whether an applicant for benefits is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Relevant here are both step three, which considers whether an applicant's impairment is the same as or comparable to an impairment listed in agency regulations, and step four, which considers whether an applicant is able to perform past relevant work. *See id.* Also relevant is an intermediate step, one that the agency conducts between steps three and four, in which the agency considers the most that a person in the same position as the claimant is able to do. *See id.*; § 404.1545(a)(1).

**Factual Background**

On September 30, 2008, Norris submitted both an application for supplemental security income and an application for disability benefits. A.R. 164, 169; ECF No. 7. Norris stated that he became disabled on August 27, 2008, and that he sought benefits for the following impairments: a heart condition, a back injury, a neck injury, migraines, and asthma. A.R. 84.

After reviewing Norris's submissions, on January 26, 2009, the agency denied Norris's applications because it found that he was not disabled. A.R. 84–85. Social Security based its decision on Norris's prior medical records, his own statements, and how his condition affected his ability to work. A.R. 84. This evidence indicated to the agency that Norris's condition was severe but not one that would prevent him for working for twelve consecutive months. *Id.*

Within 90 days, Norris requested reconsideration of the agency's decision. A.R. 91. Both a physician and a disability examiner independently reviewed Norris's request and considered additional medical evidence submitted since the agency's initial decision. A.R. 93, 96. On July 16, 2009, after a thorough review of all the submitted information, Social Security

determined that its initial determination was proper under law.  *Id.*  It found that, based on Norris's description of his previous work as a cashier, Norris would have the ability to work as a cashier within twelve months of the onset of his condition.  A.R. 96.

Upon Norris's timely request, an ALJ held a hearing in Norris's case in Peru, Illinois on September 13, 2010.[2]  A.R. 40.  At the hearing, Norris testified that he was 30-years-old and had trouble driving and reading.  A.R. 44, 46, 48.  Norris recounted that, over the prior fifteen years, he worked primarily as a cashier and a manager at a fast-food restaurant.  A.R. 49.  He offered testimony that he has suffered migraines since he was was involved in auto accident on August 27, 2008.  A.R. 49, 51.  Norris explained that his migraine medication made him dizzy and lightheaded and that it increased his blood pressure.  A.R. 51–52.  Additionally, Norris also testified that he frequently experienced a rapid heartbeat because of his medication.  A.R. 53.  Norris described his need to rest six hours a day and nap up to three hours a day.  A.R. 55.  Norris also testified that he experienced vision trouble every few months.  A.R. 57.  Norris claimed that all of the above conditions prevented him from walking at length, from shopping, and from using the computer.  A.R. 66, 71.

A vocational expert also testified at Norris's hearing.  A.R. 74–79.  The vocational expert testified that an individual with limitations like Norris's would not be able to work as a fast-food restaurant manager but would be able to work as a cashier.  A.R. 75.  The vocational expert also identified examples of other jobs in the regional economy that such an individual could perform.  *Id.*

The following month, on October 19, 2010, the ALJ found that Norris was not disabled under the Social Security laws.  A.R. 28.  The ALJ provided a detailed explanation of the

---

[2] The ALJ worked in the agency's Office of Disability Adjudication and Review.  A.R. 40.

regulatory five-step process. A.R. 22–23. First, the ALJ determined that Norris failed to meet step three because although Norris's impairments were "severe" in nature, they were not the same as or comparable to those listed in applicable regulations.[3] A.R. 24. Further, the ALJ found that Norris had the ability to perform light work. A.R. 24–27. This caused Norris to fail to meet step four because the ALJ concluded that the evidence presented showed that he was capable of performing his past work as a cashier. A.R. 27–28.

On November 3, 2010, Norris sought further review of the ALJ's decision with an appeals council. A.R. 8. The appeals council denied review. A.R. 1.

Before this court, Norris argues that he is disabled within the meaning of the Social Security regulations. First, Norris contends that the ALJ erred in improperly comparing his impairments to those listed in the regulations. Pl. Mot. at 3, p. ID # 773.[4] Second, Norris argues that the ALJ should have found that additional impairments qualified as severe. Third, Norris argues that the ALJ improperly weighed certain medical and vocational evidence, as well as Norris's own statements.

**Standard of Review**

The agency's factual findings are "conclusive" if substantial evidence supports them. 42 U.S.C. §§ 405, 1383(c). This court may not "decide the facts anew, reweigh the evidence, or substitute [its] own judgment for that" of the agency. *Delgado v. Brown*, 782 F.2d 79, 82 (7th Cir. 1986).

---

[3] "Severe" is a term of art in the regulations. A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).
[4] Norris presents his arguments in a filing styled as a motion for summary judgment. The court construes Norris's motion as one for judgment on the administrative record.

**Discussion**

Norris first argues that the ALJ improperly compared his severe impairments with those in the regulations. While the ALJ acknowledged that Norris's migraines and aortic aneurysms qualify as severe impairments, the ALJ concluded that migraines "are not contemplated" in the required regulations. A.R. 23–24. The ALJ also determined that Norris's aortic aneurysms, albeit severe, were not sufficiently comparable "to meet the requirements . . . governing disorders of the cardiovascular system." A.R. 24. In particular, the ALJ considered the regulation governing "aneurysm of aorta or major branches." *Id.* The ALJ determined that Norris's impairment was insufficient for step-three purposes because the medical evidence did not show a "dissection . . . demonstrated by appropriate medical imaging." *Id.* Norris offers no coherent legal argument that his cardiovascular condition is comparable to that addressed in the applicable regulations. In support of his argument, Norris discusses "Listing 4.00 at A.8 (ix)." However, section 4.00(A) of Part 404A simply does not contain a subsection 8. *See* 20 C.F.R. Part 404, Subpart P, App. 1. There is a subsection (8)(a)(ix) in 4.00(C) which governs when the agency will purchase exercise tests. Regardless, the ALJ applied the correct law, which is sufficient at this stage of review.

Additionally, Norris argues that the ALJ erred in failing to classify Norris's asthma, back pain, and neck pain as "severe" impairments. The ALJ, however, did not ignore these conditions. The ALJ considered Norris's asthma, back pain, and neck pain when assessing Norris's "residual functional capacity. "i.e., "the most [claimants] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1); *see* A.R. 25–26. The agency's failure to conclude that a specific condition qualifies as severe, standing alone, is not reversible error when the agency

5

considers the condition as part of the functional-capacity analysis. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, Norris's principal argument is that the ALJ improperly weighed and credited certain kinds of medical and vocational evidence as well as other testimony. After Norris submitted his benefit applications to the agency, certain physicians assessed Norris's condition and concluded that he would be able to perform light work within twelve months of the alleged onset of his disability. Norris argues that it was improper for the ALJ to place *any* weight on these assessments because the physicians were offering an opinion about what might occur in the future. Norris identifies no law or case that prevents Social Security from relying on the expertise of physicians opining about a person's ability to work in the future.[5] Norris critiques the opinions of the physicians for other reasons as well, but his arguments, even if supported by the record, simply go to the weight of the evidence. *See id.* at 6, p. ID # 776.

Norris highlights additional evidence, statements from himself, his wife, his mother, and a physician, to support a disability finding. *See id.* at 7–9, p. ID # 777–79. Norris also contends that the testimony of a vocational expert did not support the ALJ's functional-capacity finding. *See id.* at 9, p. ID # 779. This court does not weigh the evidence or substitute its judgment for that of the agency. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Here, the ALJ provided detailed reasons for finding that Norris was able to perform light work and that Norris did not have "totally incapacitating symptoms." A.R. 27. Because the evidence provided by the ALJ in support of its factual findings is, indeed, substantial, those findings are conclusive and not subject to reevaluation.

---

[5] Norris cites *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003), but this case does not stand for the proposition that the agency may not rely on the conclusions of doctors who offer an opinion about a person's ability to do work in the future.

6

**Conclusion**

The court does not doubt the seriousness of Norris's medical condition or its life-altering nature. Nor does the court question Norris's sincerity in feeling disabled, but federal law affords benefits only to individuals who meet exacting criteria. The ALJ concluded that Norris meets some, but not all, of these criteria. And the court's review is deferential. Because substantial evidence supports the ALJ's determination that Norris is not disabled within the meaning of the Social Security laws, the court denies Norris's motion and affirms the agency's decision.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  October 15, 2014